UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 8|9|19

---

MICHAEL NELSON and SAMUEL LUNA,

                          Plaintiffs,

       -v-

THE CITY OF NEW YORK, NEW YORK CITY POLICE
OFFICER JOHN MISZUK, NEW YORK CITY POLICE
LITUTENANT MATEUSZ TKACZUK, NEW YORK
POLICE OFFICER SPIROS FRANGATOS, NEW YORK
POLICE OFFICER DAVID CORTES, NEW YORK
STATE CORRECTIONAL OFFICER ROCKY ETIENNE,
NEW YORK STATE CORRECTIONAL OFFICER
ANTONIO FONSECO, NEW YORK STATE
CORRECTIONAL LIEUTENANT PHILLIP M.
DETRAGLIA, NEW YORK STATE CORRECTIONAL
OFFICER ANTHONY WILLINGHAM, NEW YORK
STATE CORRECTIONAL SERGEANT GREGORY A.
STOVALL, NEW YORK STATE CORRECTIONAL
LIEUTENANT JAMES R. TEDESCO, NEW YORK
STATE CORRECTIONAL CAPTAIN MICHAEL MOE
(fictitious name), JOHN DOES (fictitious names),
RICHARD ROES (fictitious names), MICHAEL MOES
(fictitious names), PAUL POES (fictitious names),

                          Defendants.

18 Civ. 4636 (PAE)

<u>OPINION & ORDER</u>

---

PAUL A. ENGELMAYER, District Judge:

      Plaintiffs Michael Nelson and Samuel Luna bring this action under 42 U.S.C. § 1983 and

state law against the City of New York (the "City") and several New York Police Department

("NYPD") officers (collectively the "City defendants"), as well as numerous New York State

Department of Corrections and Community Supervision ("DOCCS") officers (the "DOCCS

defendants"). Nelson and Luna bring a number of claims under § 1983, including false arrest;

false imprisonment; assault; battery; unlawful search and seizure, including in connection with a

strip search; wrongful prosecution; abuse of process; violation of due process rights; failure to

1

intercede; and fabrication of an account or evidence. Nelson and Luna also bring claims against the City, for *Monell* liability under § 1983. Nelson, independently, brings a state-law claim for malicious prosecution and for *respondeat superior* liability against the City based on that claim.

Pending now are motions to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. The City defendants move to dismiss all claims against the individual City defendants and all claims of municipal liability. The individual DOCCS defendants move to dismiss all claims against them.

For the following reasons, the Court grants in part and denies in part each motion.

## I. Background[1]

### A. The Parties

Nelson and Luna are residents of New York State. TAC ¶ 7. They have brought claims against the City, 10 identified individual defendants, one unidentified individual defendant, and four categories of unidentified defendants.

---

[1] The Court draws these facts principally from the Third Amended Complaint ("TAC"). Dkt. 71. *See DiFolco v. MSNBC Cable LLC*, 622 F.3d 104, 111 (2d Cir. 2010) ("In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint."). The Court accepts all factual allegations in the TAC as true, drawing all reasonable inferences in plaintiffs' favor. *See Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012).

The Court also cites several documents that the motion to dismiss incorporates by reference. The City defendants submitted a declaration from Kevin J. Kelly, Esq., Dkt. 75 ("Kelly Decl."), attaching these exhibits, which include the DOCCS Unusual Incident Report, *id.* Ex. A ("UIR"), and the Criminal Court Complaint, *id.* Ex. D ("Crim. Compl."). When the factual allegations in these documents conflict with those in the TAC, the Court accepts the facts alleged in the TAC. *See Faulkner v. Beer*, 463 F.3d 130 (2d Cir. 2006) ("[B]efore materials outside the record may become the basis for a dismissal, several conditions must be met. For example, even if a document is integral to the complaint, it must be clear on the record that no dispute exists regarding the authenticity and accuracy of the document." (internal citations and quotation marks omitted)).

The City is responsible for the NYPD. On October 31, 2018, Nelson and Luna's counsel received a letter from the New York City Law Department identifying the NYPD officers that came to the Queensboro Correctional Facility on October 25, 2016. *Id.* ¶ 43.

Because plaintiffs do not have a clear understanding of the names of certain of the NYPD officers with whom they interact, they have alternatively sued officers by name and pseudonym. Thus, the individual NYPD officers described in the TAC as "John Does" may overlap with, or be, defendants John Miszuk, Mateusz Tkaczuk, Spiros Frangatos, and/or David Cortes. *Id.* Nelson and Luna also bring claims against Tkaczuk, an NYPD Lieutenant, and the unidentified "Richard Roes" in their capacity as NYPD supervisors. *Id.* ¶¶ 8–10.

The same is true with respect to the individual DOCCS defendants. On October 18, 2018, plaintiffs' counsel received a copy of the DOCCS Unusual Incident Report ("UIR") from the New York State Attorney General's office, identifying the DOCCS employees involved in the incident. *Id.* ¶ 20. Plaintiffs' counsel asked the assigned Assistant Attorney General ("A.A.G."), Wilson, to "speak with the DOCCS personnel mentioned in the document" to determine specific officers' roles in the incident. *Id.* ¶ 22. However, neither A.A.G. Wilson nor his successor A.A.G. Bruce Turkle provided the requested information to Nelson and Luna's counsel. *Id.* ¶ 23. As a result, the individual DOCCS Officers described in the TAC as "Michael Moes" may overlap with, or be, defendants Rocky Etienne, Antonio Fonseco, Phillip M. Detraglia, Anthony Willingham, Gregory A. Stovall, and James R. Tedesco. *Id.* ¶ 19. Likewise, the individual described in the TAC as "Michael Moe Correctional Captain" may be one of defendants Detraglia, Stovall, or Tedesco, all of whom have supervisory rank. *Id.* Nelson and Luna also bring claims against Detraglia, Gregory, Tedesco, "Michael Moe Correctional

Captain" and the unidentified "Paul Poes" in their capacity as DOCCS supervisors. *Id.* ¶¶ 11–12.

### B.   Factual Background

On October 25, 2016, at approximately 1:30 p.m., Nelson and Luna entered the New York State DOCCS Queensboro Correctional Facility, located in Long Island City, New York, to visit a friend who was an inmate at the facility. TAC ¶ 13. After clearing the facility's security procedures without incident, Nelson and Luna entered the visiting room. *Id.* ¶ 14. When their friend arrived, Nelson and Luna each shook his hand. *Id.* ¶ 15. Nelson and Luna visited with their friend for about 30 minutes without additional physical contact. *Id.* ¶¶ 16, 18. Nelson and Luna allege that neither passed any item to their friend. *Id.* ¶ 17.

Approximately 30 minutes into Nelson and Luna's visit, an unidentified DOCCS officer escorted their friend from the visiting room. *Id.* ¶ 18. Nelson and Luna waited in the visiting room for approximately 25 minutes after their friend's removal. *Id.* ¶ 27. During this time, Luna was permitted to use the bathroom by DOCCS officers, but Nelson was not. *Id.* ¶¶ 29–30.

Nelson and Luna were then approached by an unidentified DOCCS officer, identified in the TAC as "Michael Moe Correctional Captain," told to leave the visiting room, and instructed to wait in the facility's locker room, where visitors stored their personal belongings before entering the facility. *Id.* ¶¶ 31–33. Nelson and Luna waited in the locker room without being permitted to leave by DOCCS officers for one to one-and-a-half hours. *Id.* ¶¶ 34, 37. Nelson again asked to use the bathroom, but he was not permitted to leave. *Id.* ¶ 36. After complaining to the DOCCS officers, Nelson was given a bottle in which to urinate. *Id.* ¶ 38. While being observed by a DOCCS officer, Nelson urinated into the bottle, it overflowed, and urine came into contact with his hand and the floor. *Id.* ¶¶ 39–41.

While being held in the locker room, Nelson saw four plainclothes NYPD officers behind a glass window, likely NYPD officers Miszuk, Tkaczuk, Frangatos, and Cortes, speaking with two DOCCS officers. *Id.* ¶ 42. Nelson "heard one of the [DOCCS officers] . . . tell the [NYPD officers], in sum and substance that he thought he had seen one of the Plaintiffs pass something." *Id.* ¶ 44. Then, "[o]ne of the [NYPD officers] asked this [DOCCS officer], in sum and substance, if he thought he had seen one of the Plaintiffs pass something, or if he actually saw it." *Id.* ¶ 45. "The [DOCCS officer] said that he thought he saw it." *Id.* ¶ 46

Approximately 10 minutes after this conversation, the DOCCS officers and the NYPD officers entered the locker room and placed Nelson under arrest at the direction of NYPD officer Tkaczuk. *Id.* ¶¶ 47–48. Officers told Luna that he was free to leave. *Id.* ¶ 49.

Nelson was then handcuffed, removed from the facility, and taken to a local police precinct, where he was subjected to a visual body cavity strip search. *Id.* ¶¶ 47, 50–52. No contraband was found on Nelson. *Id.* ¶ 53. Nelson was held at the precinct for a few hours and then taken to Queens Central Booking. *Id.* ¶ 55. Nelson was later arraigned and charged with Promoting Prison Contraband in the Second Degree in violation of N.Y. Penal Law § 205.20(1), Criminal Sale of Marijuana in the Fifth Degree in violation of Penal Law § 221.35, and Unlawful Possession of Marijuana in violation of Penal Law § 221.05. *Id.* ¶ 56. At his arraignment, bail was set at $2,500. *Id.* ¶ 65. Nelson was held at the Vernon C. Bain Center for the following week, until he was able to make bail. *Id.* ¶¶ 66–67.

The charges against Nelson were set out in a Criminal Court Complaint sworn to by NYPD Officer Miszuk. It states, in relevant part, that Miszuk was "informed by Correction Officer Rocky Etienne . . . [that] he observed the defendant, Michael Nelson, pass a plastic bag containing a quantity of marijuana to [an] inmate . . . . [Etienne] was present when Correction

Officer Antonio Fonseco . . . recovered a plastic bag containing a quantity of marijuana from [an] inmate . . . as he exited the visiting room[,] . . . [and it was Etienne's] conclusion that the substance recovered is marijuana . . . based upon his experience as a police officer and . . . his training in the identification and packaging of controlled substances and marijuana." Crim. Compl. at 1–2. Nelson and Luna claim that the statements in the Criminal Court Complaint are lies. They deny that either possessed or passed marijuana. TAC ¶¶ 57–60. On February 24, 2017, after approximately three court appearances and a January 26, 2017 Decision and Order by Criminal Court Judge Peter F. Vallone, Jr., all charges against Nelson were dismissed and sealed pursuant to New York Criminal Procedure Law § 30.30. *Id.* ¶¶ 68–69.

After the incident, Nelson and Luna's counsel spoke to their friend, who reported that he had procured the marijuana from within the prison. *Id.* ¶ 61.

### C. Procedural History

On May 24, 2018, Nelson and Luna filed their initial complaint against the City, NYPD officer Miszuk, the unidentified "John Doe" NYPD officers, and the unidentified "Richard Roe" NYPD supervisory officers, as well as DOCCS officers Etienne and Fonseco, an unidentified DOCCS officer described as "Michael Moe Correctional Captain," the unidentified "Michael Moe" DOCCS officers, and unidentified "Paul Poe" DOCCS supervisory officers. Dkt. 1. On October 4, 2018, the City Defendants answered. Dkt. 19. On October 25, 2018, plaintiffs filed an amended complaint, adding as defendants NYPD officer Tkaczuk and DOCCS officers Detraglia, Willingham, Stovall, and Tedesco. *See* Dkt. 24.

On November 5, 2018, Nelson and Luna filed a second amended complaint ("SAC"). Dkt. 36. On January 9, 2019, the City defendants filed a motion to dismiss, Dkt. 61, and a memorandum of law, Dkt. 63. On January 10, 2019, the DOCCS defendants filed a motion to dismiss Dkt. 64, and a memorandum of law, Dkt. 68. On January 11, 2019, the Court held an

initial conference, at which plaintiffs indicated an intention to file the TAC. The Court gave plaintiffs until February 1, 2019 to do so and stated that this would be plaintiffs' last opportunity to amend. Dkt. 70.

On February 1, 2019, the plaintiffs filed the TAC, the operative complaint today. Dkt. 71. It brings five sets of claims: (1) § 1983 claims against the City defendants and DOCCS defendants for false arrest and imprisonment, assault and battery, unlawful search and seizure, wrongful prosecution, abuse of process, failure to intercede and fabrication of an account and/or evidence; (2) § 1983 claims against supervisory personnel—individual City defendants Tkaczuk, unidentified "Richard Roe" NYPD supervisory officers, individual DOCCS defendants Detraglia, Willingham, Stovall, Tedesco, the unidentified DOCCS "Michael Moe Correctional Captain," and unidentified "Paul Poe" DOCCS supervisory officers—for failure to remedy the wrongs committed by subordinates and failure to properly train, screen, supervise, or discipline subordinates; (3) § 1983 claims against the City for municipal liability; (4) state-law claims against the City for *respondeat superior* liability based on Nelson's state-law malicious prosecution claim; and (5) state-law claims against the City defendants for malicious prosecution. TAC ¶¶ 71–89.

On February 21, 2019, the DOCCS defendants filed a motion to dismiss for failure to state a claim as to all claims against them, Dkt. 72, and a memorandum of law, Dkt. 73 ("DOCCS Mem."). On February 22, 2019, the City defendants filed a motion to dismiss all claims against them, Dkt. 75, and a memorandum of law, Dkt. 76 ("City Mem."). On March 15, 2019, plaintiffs filed a memorandum of law in opposition. Dkt. 77 ("Pl. Mem."). On March 25, 2019, defendants filed reply briefs. Dkt. 78 ("DOCCS Reply"); Dkt. 79 ("City Reply").

## II.  Applicable Legal Standards

### A.  Rule 12(b)(6)

To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 566 U.S. 662, 678 (2009).  A complaint is properly dismissed where, as a matter of law, "the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Twombly*, 550 U.S. at 558.

In considering a motion to dismiss, a district court must "accept[] all factual claims in the complaint as true, and draw[] all reasonable inferences in the plaintiff's favor." *Lotes Co., Ltd. v. Hon Hai Precision Indus Co.*, 735 F.3d 395, 403 (2d Cir. 2014) (quoting *Famous Horse Inc. v. 5th Ave. Photo Inc.*, 624 F.3d 106, 108 (2d Cir. 2010)).  However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*  "[R]ather, the complaint's *factual* allegations must be enough to raise a right to relief above the speculative level, level, *i.e.*, enough to make the claim plausible." *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) (quoting *Twombly*, 550 U.S. at 555, 570) (internal quotation marks omitted) (emphasis in *Arista Records*).

### B.  Section 1983

Section 1983 provides redress for the deprivation of federally protected rights by persons acting under state law.  42 U.S.C. § 1983.  To prevail on a § 1983 clam, a plaintiff must establish (1) the violation of a right, privilege, or immunity secured by the Constitution or laws of the

United States (2) by a person acting under the color of state law. *See West v. Atkins*, 487 U.S.

42, 48 (1988); *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 155–56 (1978).

## III.    Discussion

The plaintiffs bring five claims.

The first claim alleges, under § 1983, a collection of violations of multiple constitutional

rights. Both plaintiffs allege false arrest and imprisonment and failure to intervene against both

the DOCCS and the City defendants. In addition, Nelson brings claims against both sets of

defendants for violations of law related to his strip search, malicious prosecution, abuse of

process, and fabrication of evidence.

The second claim, brought by both plaintiffs against both DOCCS and City defendants is

for supervisory liability, based on the above § 1983 allegations.

The third claim, brought by both plaintiffs, alleges *Monell* liability against the City.

The fourth and fifth claims, brought by Nelson under state law, are against the City

defendants for malicious prosecution through both direct and *respondeat superior* theories of

liability.

All defendants have moved to dismiss the claims against them.[2]

### A.    Claim One: § 1983 Claims By Both Plaintiffs

#### 1.    False Arrest and Imprisonment

Nelson and Luna bring § 1983 claims for false arrest and imprisonment based on the time

they were held in the prison facility's locker room. The DOCCS defendants argue that the TAC

---

[2] Both sets of defendants argue that the TAC does not allege the personal involvement of any
individual defendant in any violations underlying Nelson and Luna's individual § 1983 claims.
The Court, in analyzing each claim, evaluates whether there are allegations sufficient to support
a claim against each defendant.

fails to allege that the DOCCS officers placed Nelson or Luna under arrest and that, if they did

so, the arrest was supported by probable cause. The City defendants make the same arguments.

"A § 1983 claim for false arrest, resting on the Fourth Amendment right of an individual

to be free from unreasonable seizures, including arrest without probable cause, is substantially

the same as claim for false arrest under New York law." *Weyant v. Okst*, 101 F.3d 845, 852 (2d

Cir. 1996), *cert. denied*, 528 U.S. 946 (1999) (internal citations omitted). Under New York law,

to plead a cause of action for false arrest or false imprisonment, a plaintiff must plausibly allege

that: "(1) the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the

confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was

not otherwise privileged." *Savino v. City of New York*, 331 F.3d 63, 75 (2d Cir. 2003) (internal

quotation marks and citation omitted)). The same elements govern a federal § 1983 claim for

false arrest because, in analyzing such claims, courts generally look to the law of the state in

which the arrest occurred. *Jaegly v. Couch*, 439 F.3d 149, 151–52 (2d Cir. 2006). The elements

of a claim of false arrest under § 1983 have been held "substantially the same" as those of a false

arrest claim under New York law. *Hygh v. Jacobs*, 961 F.2d 359, 366 (2d Cir. 1992).

"The existence of probable cause to arrest constitutes justification and is a complete

defense to an action for false arrest" under both federal and state law. *Weyant*, 101 F.3d at 852

(internal quotation marks and citation omitted). "Probable cause exists when the officers have

knowledge of, or reasonably trustworthy information as to, facts and circumstances that are

sufficient to warrant a person of reasonable caution in the belief that an offense has been or is

being committed by the person to be arrested." *Zellner v. Summerlin*, 494 F.3d 344, 369 (2d Cir.

2007). "The question of whether or not probable cause existed may be determinable as a matter

of law if there is no dispute as to the pertinent events and the knowledge of the officers."

*Weyant*, 101 F.3d at 852.

The DOCCS defendants first argue that no DOCCS Officer placed Nelson and Luna under arrest. Rather, they argue, an arrest occurred only when NYPD officer Tkaczuk decided to formally arrest and remove Nelson from the facility. The DOCCS defendants thus depict the period when Nelson and Luna were held in the facility's locker room as a temporary detention short of an arrest.

This argument does not justify dismissal. In New York, "[t]he action of false imprisonment is derived from the ancient common-law action of trespass and protects the personal interest of freedom from restraint of movement. Whenever a person unlawfully obstructs or deprives another of his freedom to choose his own location, that person will be liable for that interference." *Broughton v. State of New York*, 37 N.Y.2d 451, 456 (1975); *see also Vasquez v. Pampena*, No. 08 Civ. 4184 (JG), 2009 WL 1373591, at *2 (E.D.N.Y. May 18, 2009) (holding that a plaintiff may bring a § 1983 claim for false imprisonment for the period he was confined while an officer issued a summons). Here, the facts alleged would amply support a claim of unjustified confinement amounting to an arrest. As alleged, Nelson and Luna were held in the locker room for one to one-and-a-half hours, TAC ¶ 34, during which time they were told by the DOCCS officers that they were not permitted to leave, and Nelson was required to urinate into a plastic bottle under the supervision of a DOCCS officer. *Id.* ¶¶ 35–40. On the facts pled, it is also arguable that Nelson's confinement began earlier, when he was not permitted to exit the visiting area to use the restroom. *Id.* ¶ 30. Drawing all reasonable inferences in plaintiffs' favor, they have adequately pled that the DOCCS officers subjected them to false arrest.

Second, the DOCCS defendants argue that, on the facts pled, the defendants had probable cause to arrest plaintiffs. That too is wrong. The TAC specifically alleges that plaintiffs did not exchange contraband with their friend. *Id.* ¶¶ 15–17, 59–60. And it does not allege facts that give rise to a reasonable, if incorrect, perception on the part of the DOCCS officers that plaintiffs had done so. On the contrary, as alleged, the DOCCS officers intervened 30 minutes after the only physical contact between plaintiffs and their friend. *Id.* ¶ 18. To be sure, the Criminal Court Complaint states that "Correction Officer Rocky Etienne . . . observed the defendant, Michael Nelson, pass a plastic bag containing a quantity of marijuana to [an] inmate . . . ." Crim. Compl. at 1. But it is elementary civil procedure that, while the Court can consider the fact of the Criminal Court Complaint, it cannot treat this factual allegation within it as true; otherwise, nearly all false arrest claims brought by an arrested plaintiff would be subject to dismissal. "[A]lthough the Court may consider the contents of a document in the context of a motion to dismiss, documentary evidence does not trump a plaintiff's contrary factual allegations." *Vogelfang v. Capra*, No. 10 Civ. 3827 (PAE), 2012 WL 832440, at *15 (S.D.N.Y. Mar. 13, 2012) (citing *Roth v. Jennings*, 489 F.3d 499, 510–11 (2d Cir. 2007)). Nelson and Luna's assertion that the DOCCS officers could not have observed an exchange of contraband because no such exchange happened, and that the allegations in the Criminal Court Complaint are false, controls. The DOCCS defendants' bid for dismissal, based on the ostensible existence of probable cause, thus fails to carry the day.

The City defendants argue that Luna's false arrest and false imprisonment claims must be dismissed because, on the facts pled, they were not involved in detaining him. They separately argue that Nelson's arrest was supported by probable cause. Neither argument is persuasive.

As to the first argument, as plaintiffs note, the TAC makes reasonable the inference that it was at the NYPD's instruction that the DOCCS officers held both plaintiffs. The TAC alleges that DOCCS officers contacted the NYPD after finding marijuana on plaintiffs' inmate friend. It is a plausible inference that the DOCCS officers, in continuing to detain plaintiffs, heeded the NYPD's instruction. This inference is supported by the fact that only after the NYPD officers arrived at the facility was the decision made to handcuff Nelson and to release Luna.

As to the second argument, the City contends that the NYPD officers would have had probable cause to arrest Nelson if they relied on DOCCS officer Etienne's representation that he had witnessed Nelson pass contraband. *See* Crim. Compl. at 1; *Wieder v. City of New York*, 569 F. App'x 28, 29 (2d Cir. 2014) (law enforcement official has probable cause to arrest if he receives information "from some person, normally the putative victim or eyewitness"). "When information is received from a putative victim or eyewitness, probable cause exists, unless the circumstances raise doubt as to the person's veracity." *Curley v. Vill. of Suffern*, 268 F.3d 65, 69 (2d Cir. 2001) (internal citations omitted). The City defendants argue that Etienne's account, coupled with the recovery of marijuana from plaintiffs' friend, supplied probable cause. But the TAC calls into question whether Etienne's eyewitness account was firm or credible. It alleges merely that Nelson overheard a conversation in which an officer only "thought he had seen" one of them pass something. *See* TAC ¶¶ 44–46. That statement alone is too equivocal to support probable cause that either plaintiff exchanged contraband. The City defendants are at liberty in discovery to develop the information to which they were privy at the time and to argue then that it supplied probable cause. The allegations in the TAC, however, fall short of establishing this.

The Court accordingly denies both sets of defendants' motions to dismiss plaintiffs' false arrest and imprisonment claims.

### 2. Failure to Intervene

Nelson and Luna bring failure to intervene claims. Defendants move to dismiss these on the grounds that there was no underlying constitutional violation. An officer can be held liable under § 1983 for "the preventable harm caused by the actions of the other officers where that officer observes or has reason to know that: (1) excessive force is being used, (2) a citizen had been unjustifiably arrested, or (3) any constitutional violation has been committed by a law enforcement official." *Anderson v. Branen*, 17 F.3d 552, 556 (2d Cir. 1994) (internal citations omitted). A failure to intervene under § 1983 cannot prevail when there is no underlying constitutional violation. *Wieder v. City of New York*, 569 F. App'x 28, 30 (2d Cir. 2014).

Here, however, the Court has held that the TAC adequately pleads allegations of false arrest. And the TAC alleges that the DOCCS and NYPD officers were present during plaintiffs' unlawful detention and failed to intervene. *See* TAC ¶¶ 31–41 (DOCCS officers); *id.* ¶¶ 44–47, 50 (NYPD officers). There is therefore no basis to dismiss this claim.

### B. Claim One: § 1983 Claims Brought Solely By Nelson

### 1. Strip-Search Related Claims

Nelson brings claims of unlawful search and seizure and assault and battery arising out of the visual body cavity search performed on him while in custody at the precinct. In moving to dismiss, the City defendants argue that they had the reasonable suspicion required to support this search. Nelson brings these claims against both sets of defendants, suing the DOCCS defendants on the theory that, as law enforcement officers, they knew that by falsely accusing Nelson of passing contraband they were exposing him to a strip search.

Under the Fourth Amendment, for a strip search of a misdemeanor arrestee to be lawful, the officer must possess "reasonable suspicion that [a misdemeanor] arrestee is concealing weapons or contraband based on the crime charged, the particular characteristics of the arrestee,

and/or the circumstances of the arrest." *Hartline v. Gallo*, 546 F.3d 95, 100 (2d Cir. 2008).

Reasonable suspicion is "stronger than a mere 'hunch,' but something weaker than probable

cause." *Varrone v. Bilotti*, 123 F.3d 75, 79 (2d Cir. 1997) (quoting *Wood v. Clemons*, 89 F.3d

922, 929 (1st Cir. 1996)). "Being arrested for a narcotics-related crime [does not] automatically

[give] rise to reasonable suspicion that drugs are being carried in an arrestee's body cavities, so

as to justify a strip search." *Sarnicola v. Cty. of Westchester*, 229 F. Supp. 2d 259, 273

(S.D.N.Y. 2002). "Whether a particular strip search is constitutional 'turns on an objective

assessment of facts and circumstances confronting the searching officer at the time, and not on

the officer's actual state of mind at the time' of the search." *Quiles v. City of New York*, No. 15

Civ. 1055 (CM), 2016 WL 6084078, at *11 (S.D.N.Y. Oct. 12, 2016) (quoting *Maryland v.*

*Macon*, 472 U.S. 463, 470–71 (1985)).

Here, the NYPD officers argue that they possessed reasonable suspicion that Nelson held

contraband on his person insofar as a DOCCS officer had informed them that Nelson had passed

contraband to an inmate after Nelson had cleared security at the prison, and that DOCCS officers

had thereafter kept Nelson under constant observation. City Mem. at 15. As noted, however, as

pled in the TAC, the extent of notice to the NYPD is disputed—NYPD officers had been alerted

that the DOCCS officers were far from sure whether Nelson had passed contraband to his friend

and one NYPD officer questioned his DOCCS counterpart whether he had seen or only thought

he had seen this, and was told the latter. The TAC also does not clearly allege that the NYPD

officers were aware either that Nelson had cleared the facility's security procedures without

incident or had been surveilled thereafter. The NYPD defendants are at liberty to develop in

discovery what concretely they had been told about Nelson, but the TAC does not allege enough

to establish that the NYPD officers had reasonable suspicion justifying a strip search.

Although the DOCCS defendants do not make this argument with any precision, the Court infers that they seek dismissal on the additional ground that their actions were too remote from the strip search for them to be accountable for it. Nelson's theory is that the act of making a false claim against him of passing contraband made it likely that a strip search would follow back at the stationhouse. This theory of liability is colorable, as § 1983 actions embed "the tort principle of proximate causation." *Higazy v. Templeton*, 505 F.3d 161, 175 (2d Cir. 2007) (citing *Townes v. City of New York*, 176 F.3d 138, 146 (2d Cir. 1999)). "To prevail in a § 1983 action, the plaintiff must prove that the defendant's unlawful actions were the proximate cause of his injuries." *Urbina v. City of New York*, No. 14 Civ. 9870 (PAC), 2016 WL 79991 at *2 (S.D.N.Y. Jan. 6, 2016) (citing *Loria v. Gorman*, 306 F.3d 1271, 1287 (2d Cir. 2002)). In contrast, "[w]hen there is an intervening act or omission that is 'extraordinary under the circumstances' and is 'not foreseeable in the normal course of events' it may break the causal chain of events and remove liability from an earlier acting defendant." *Martin v. City of New York*, 793 F. Supp. 2d 583, 586 (E.D.N.Y. 2011) (quoting *Derdiarian v. Felix Contracting Corp.*, 51 N.Y.2d 308, 315 (1980)).

The TAC alleges enough to support Nelson's theory that the strip search proximately resulted from the nature of the false claim allegedly made by the DOCCS defendants against him. The allegation that Nelson had carried contraband into prison, in a manner that eluded security, is such, Nelson argues, as to lead reasonable officers to conclude that a strip search was justified—that there was reasonable suspicion that further contraband, or evidence of the earlier hidden contraband, would be found on the arrestee's person. *See Hartline*, 546 F.3d at 100. And while § 1983 requires a showing of personal involvement on the part of the defendant in the constitutional violation, *Williams v. Smith*, 781 F.2d 318, 323 (2d Cir. 1986), a defendant need

not personally conduct the strip search to be liable, *Howard v. Schoberle*, 907 F. Supp. 671, 680 (S.D.N.Y. 1995) (denying summary judgment to NYPD defendants for a strip search conducted by a federal agent following an NYPD-led raid); *see also Hartline*, 546. F.3d at 100 (permitting strip-search related § 1983 claims against arresting officer who did not participate in the search).

The Court therefore denies defendants' motions to dismiss these claims. Discovery is needed to test Nelson's claim that DOCCS defendants falsely accused him and, if so, which defendants and whether that accusation was a proximate cause of the ensuing strip search.

### 2. Fabrication of Evidence

Nelson alleges that the NYPD and DOCCS officers concocted false evidence against him, specifically, the story that a DOCCS officer saw him pass contraband to his friend. TAC ¶¶ 57–58, 63. All defendants move to dismiss this claim.

To establish a constitutional violation based on the fabrication of evidence, a plaintiff must show that "an (1) investigating official (2) fabricates evidence (3) that is likely to influence a jury's decision, (4) forwards that information to prosecutors, and (5) the plaintiff suffers a deprivation of liberty as a result." *Jovanovic v. City of New York*, 486 F. App'x 149, 152 (2d Cir. 2012). "Probable cause is not a defense" to a fabrication-of-evidence claim, but the plaintiff must "show causation—*i.e.*, that the alleged fabrication of evidence led to a deprivation of his liberty." *Id.* An officer's invented account of his own observations qualifies as fabrication of evidence. *See Garnett v. Undercover Officer C0039*, 838 F.3d 265, 274 (2d Cir. 2016) (officer who fabricated account of drug sale, leading to arrest, and conveyed that information to prosecutors is liable under § 1983, even though probable cause existed for the arrest).

The DOCCS defendants argue that this claim must be limited to the sworn statements inculpating Nelson that NYPD officer Miszuk made in the Criminal Court Complaint and that the TAC does not implicate any DOCCS officers in fabricating evidence. That is incorrect,

because the TAC identifies two contexts in which DOCCS officer Etienne, allegedly falsely, implicated Nelson: the UIR, which states that Etienne "observed . . . [an inmate] receiving possible contraband from his visitor, Michael A. Nelson," UIR at 1, and the Criminal Court Complaint, which states that Etienne observed "Nelson[] pass a plastic bag containing a quantity of marijuana to[an] inmate"—representations which the TAC alleges were untrue. TAC ¶¶ 57–59. The TAC alleges that this falsehood caused Nelson initially to be denied bail and later forced to defend himself against false charges. *Id.* ¶¶ 65–68. That is enough to state a claim against Etienne, as "[f]abrication of evidence by a government officer acting in an investigative capacity" can be a basis for liability under § 1983. *Morse v. Fusto*, 804 F.3d 538, 547 n.7 (2d Cir. 2015) (internal citations and quotation marks omitted); *see also Zahrey v. Coffey*, 221 F.3d 342, 349 (2d Cir. 2000) (prosecutor's influence over grand jury witness to give false testimony violated plaintiff's "right not to be deprived of liberty as a result of the fabrication of evidence"); *Harasz v. Katz*, 327 F. Supp. 3d 418 (D. Conn. 2018) (sustaining § 1983 fabrication-of-evidence claim against state social worker). The TAC thus pleads a fabrication claim against Etienne. It does not make, however, any such concrete claim against any other DOCCS defendants. The Court, therefore, denies the motion to dismiss the claim against Etienne but grants this motion as to the other individual DOCCS defendants.

The City defendants argue that the TAC does not allege facts indicating their personal involvement in "fabricat[ing] information." City Mem. at 12. They depict the TAC as claiming that the NYPD officers were a mere conduit of false information provided by a DOCCS officer and had no reason to doubt its veracity. That too is wrong. The TAC alleges that the NYPD officers were present for the conversation in which an NYPD officer probed whether the DOCSS eyewitness was confident in his claim to have seen the contraband exchange, and received an

equivocal response, but that officer Miszuk depicted the eyewitness's account as firm in the Criminal Court Complaint while appreciating that it was false or shaky. TAC ¶¶ 44–47, 57. The TAC does not, however, allege any other NYPD defendant's personal involvement. The Court thus sustains the claim against Miszuk but dismisses those against the other City defendants.

### 3. Malicious Prosecution

Nelson also claims malicious prosecution under § 1983. To plead such a claim plausibly, a plaintiff must plead the elements of a malicious prosecution claim under New York law as well as a violation of his Fourth Amendment rights. *Manganiello v. City of New York*, 612 F.3d 149, 160–61 (2d Cir. 2010). As such, a plaintiff must allege that (1) the defendant commenced or continued a criminal proceeding against him; (2) the proceeding was terminated in the plaintiff's favor; (3) there was no probable cause for commencing the proceeding; (4) the proceeding was instituted with "actual malice"[3]; and (5) there was a post-arraignment restraint of liberty sufficient to implicate the Fourth Amendment. *McKay v. City of New York*, 32 F. Supp. 3d 499, 511 (S.D.N.Y. 2014) (quoting *Rohman v. N.Y.C. Transit Auth.*, 215 F.3d 208, 215 (2d Cir. 2000) (internal quotation marks omitted)).

The existence of probable cause is a complete defense to a malicious prosecution claim. *Savino*, 331 F.3d at 72. However, "[t]he probable cause standard in the malicious prosecution context is slightly higher for false arrest cases" requiring "facts and circumstances as would lead a reasonably prudent person to believe the plaintiff guilty." *Stansbury v. Wertman*, 721 F.3d 84, 95 (2d Cir. 2013); *Betts v. Shearman*, 751 F.3d 78, 82 (2d Cir. 2014) (citation omitted). The same is so under New York law. *See Russell v. Smith*, 68 F.3d 33, 36 (2d Cir. 1995). Thus,

---

[3] This element is satisfied where the actor who initiated the proceeding acted with malice. *See Rodriguez v. City of New York*, 291 F. Supp. 3d 396 (S.D.N.Y. 2018); *Blount v. Moccia*, No. 16 Civ. 4505 (GHW), 2017 WL 5634680 (S.D.N.Y. Nov. 21, 2017); *Berry v. Marchinkowski*, 137 F. Supp. 3d 495 (S.D.N.Y. 2015).

"when a court finds there was probable cause for an arrest, and in the absence of some indication that the authorities became aware of exculpatory evidence between the time of the arrest and the subsequent prosecution that would undermine the probable cause which supported the arrest, no claim for malicious prosecution may lie." *Johnson v. City of Mount Vernon*, No. 10 Civ. 7006 (VB), 2012 WL 4466618, at *5 (S.D.N.Y. Sept. 18, 2012); *see also Rizzo v. Edison, Inc.*, 172 F. App'x 391, 393–94 (2d Cir. 2006) ("As no exculpatory evidence became known after Plaintiff's arrest, there was also probable cause to prosecute her.").

Here, the City defendants argue that Nelson's malicious prosecution claim fails because the criminal proceeding against him was not terminated in his favor, noting the TAC's allegation that the charges against Nelson were dismissed as a result of a violation of the state speedy trial statute. TAC ¶ 69 ("[T]he People are charged from the time of arraignment, October 25, 2016 to January 26, 2017, for a total of ninety-three (93) days which exceeds the statutorily permitted 90 days, and this matter is dismissed." (quoting January 26, 2017 Criminal Court Decision and Order)). The DOCCS officers make the additional arguments that the TAC does not allege that they initiated the criminal proceeding and that it was supported by probable cause.

As to the first element, initiation, "[u]nder New York law, police officers can 'initiate' prosecution by the filing charges or other accusatory instruments." *Cameron v. City of New York*, 598 F.3d 50, 63 (2d Cir. 2010) (citing *Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 130 (2d Cir. 1997)). The TAC pleads this element by alleging that NYPD officer Miszuk swore out the Criminal Court Complaint against Nelson.

The second element, favorable termination, presents a closer question. As the Second Circuit has recently held, that element is defined more narrowly in the context of malicious prosecution claims brought under § 1983 than those brought under New York state law. That is

because, although a § 1983 claim for malicious prosecution is based on New York state law, the federal courts rely on a "specific State's law only insofar as it reflect[s] traditional common law principles *as well as* federal constitutional principles." *Lanning v. City of Glens Falls*, 908 F.3d 19, 26 (2d Cir. 2018) (citations omitted). Until the early 2000s, state law and federal § 1983 law relied on the same principles, and the Second Circuit used New York state court decisions to guide its analysis of the favorable termination element. *See id.* at 27.

In 2000, however, the New York Court of Appeals issued the first of two decisions construing that element in a manner the Second Circuit has now held is inconsistent with the constitutional right underlying a § 1983 malicious prosecution claim. The Court of Appeals rejected the notion that a plaintiff in a state law malicious prosecution action "must demonstrate innocence in order to satisfy the favorable termination prong." *Smith-Hunter v. Harvey*, 95 N.Y.2d 191, 199 (2000). The following year, the Court of Appeals characterized this holding to mean that "*any* termination of a criminal prosecution, such that the criminal charges may not be brought again, qualifies as a favorable termination, so long as the circumstances surrounding the termination are not inconsistent with the innocence of the accused." *Cantalino v. Danner*, 96 N.Y.2d 391, 395 (2001).

Last year, in *Lanning*, the Second Circuit found this state-law rule to sweep too broadly to apply to a § 1983 claim. "A § 1983 claim for malicious prosecution essentially alleges a violation of the plaintiff's right under the Fourth Amendment to be free from unreasonable seizure," the Circuit stated. *Lanning*, 908 F.3d at 28 (citing *Swartz v. Insogna*, 704 F.3d 105, 112 (2d Cir. 2013)). "[A] plaintiff asserting a malicious prosecution claim under § 1983 must [therefore] show that the underlying criminal proceeding ended in a manner that affirmatively indicates his innocence." *Id.* at 22.

The issue here is whether that description applies to the manner by which the charges against Nelson were dismissed, *i.e.*, under New York Criminal Procedure Law § 30.30, New York's speedy trial provision. TAC ¶¶ 68–69. Under New York law, a dismissal on speedy trial grounds, where the circumstances are otherwise not inconsistent with a plaintiff's innocence, has long been established to be a favorable termination. *See Smith-Hunter*, 95 N.Y.2d at 199 (§ 30.30 dismissal, where circumstances are not inconsistent with plaintiff's innocence, constitutes a favorable termination). Defendants argue, however, that under *Lanning,* such a dismissal does not show favorable termination as understood in the context of a claim brought under § 1983.

*Lanning* does not squarely resolve this question. *Lanning* itself concerned two sets of dismissed charges. As to the first set, the plaintiff did not specify "how or on what grounds" the charges against him had been dismissed, but agreed that the "dismissals were based, at least in part, on 'lack of jurisdiction.'" 908 F.3d at 28 (quoting the record). As to the second set, the Glens Falls City Court stated on the record only that that they were dismissed "in the interest of justice," which the *Lanning* court found left "the question of guilt or innocence unanswered" and so could not "provide the favorable termination required as the basis" for a § 1983 malicious prosecution claim. *Id.* at 28–29 (internal quotation marks and citation omitted). *Lanning*'s holding that a § 1983 claim was not stated was premised on the distinct circumstances attendant to the two grounds for dismissal, neither of which was under § 30.30.

There are, nonetheless, strong indications in *Lanning* that the Second Circuit would regard a dismissal under the state speedy trial provision as a favorable termination under § 1983. In discussing the Court of Appeals' 2000 decision in *Smith-Hunter*, the Second Circuit observed that New York's recognition "that the dismissal of a prosecution on speedy trial grounds is a

favorable termination although neutral with respect to guilt or innocence, still reflects the traditional common law." *Lanning*, 908 F.3d at 27 n.6 (citing Restatement (Second) of Torts § 660 cmt. d (Am. Law Inst. 1977) (principle that abandonment of a prosecution following certain types of misconduct by the accused is not a favorable termination does "[n]ot include[]" terminations due to "claims of constitutional or other privilege")). In addition, the Second Circuit traced the doctrinal split between § 1983 and New York state law as originating in the early 2000s. And it cited with apparent favor a 1997 decision, *Murphy v. Lynn*, 118 F.3d 938, 949–50 (2d Cir. 1997), in which the Second Circuit had held a dismissal under § 30.30 to be a favorable termination for purposes of § 1983. *Murphy* held that "dismissals for lack of timely prosecution should generally be considered, for purposes of a claim of malicious prosecution, a termination favorable to the accused." *Id.* at 950. The Second Circuit there distinguished a speedy trial dismissal from dismissals for lack of jurisdiction, a failure to allege sufficient facts, adjournments in contemplation of dismissal, and in the interests of justice, none of which constituted a favorable termination. The Second Circuit reasoned that "[a]n abandonment brought about by the accused's assertion of a constitutional or other privilege . . . such as the right to a speedy trial, does not fall within these categories, for the accused should not be required to relinquish such a privilege in order to vindicate his right to be free from malicious prosecution." *Id.* at 949 (citations omitted). The Second Circuit reasoned that a "failure to prosecute in a timely fashion . . . compels an inference of such an unwillingness or inability to do so as to imply a lack of reasonable grounds for the prosecution" and that viewing a speedy trial dismissal as other than favorable would unfairly compel "one charged with a criminal offense to waive his constitutional or statutory right to a speedy trial in order to preserve his right to civil retribution for a demonstrated wrong." *Id.* at 949–50 (internal quotation marks and citations

23

omitted). Notably, since *Lanning*, the Second Circuit has three times cited *Murphy* as good law. *See Dantas v. Citigroup, Inc.*, No. 18-2043-cv, 2019 WL 2910682, at *5 (2d Cir. July 8, 2019) (citing as standard for malicious prosecution claim); *Dettelis v. Sharbaugh*, 919 F.3d 161, 163 (2d Cir. 2019) (same); *Black v. Petitinato*, 761 F. App'x 18, 23 (2d Cir. 2019) (same).

To be sure, *Lanning* is a recent decision, and the Circuit has not had occasion since to consider directly whether *Murphy* remains good law. There is a split of authority among district courts on whether, following *Lanning*, a speedy trial dismissal satisfies the favorable termination element of a malicious prosecution claim under § 1983.[4] Nonetheless, the signposts above lead this Court to conclude, for the time being, that *Murphy* survives *Lanning*, such that the dismissal here of the charges against Nelson under § 30.30 fulfills the second element of a malicious prosecution claim under § 1983. In the event that ensuing case law on this point is adverse to this conclusion, the Court will stand ready, at the summary judgment stage, to reconsider this assessment.

The TAC also adequately alleges the remaining elements. It alleges that the NYPD officers were present for the exchange that called into doubt the credibility of the ostensible DOCCS eyewitness to the contraband exchange, *see* TAC ¶¶ 44–47, without which probable cause to arrest Nelson was lacking, as no other evidence implicated him, *id.* ¶ 57. And where a "Plaintiff has adequately alleged lack of probable cause and knowing perjury, [that] Plaintiff has

---

[4] *Compare Thompson v. City of New York*, No. 17 Civ. 3064 (DLC), 2019 WL 162662, at *4 (S.D.N.Y. Jan. 10, 2019) (finding that "[t]he dismissal of [plaintiff's] case on speedy trial grounds does not affirmatively indicate his innocence, as required under Section 1983") *with Blount v. City of New York*, No. 15 Civ. 5599 (PKC) (JO), 2019 WL 1050994, at *4–5 (E.D.N.Y Mar. 5, 2019) (finding favorable-termination element satisfied by such a dismissal; court states that while "*Lanning* may raise the bar for establishing favorable termination under § 1983 in certain cases, the dismissal of a prosecution on speedy trial grounds in this case easily clears that bar").

adequately alleged malice," the fourth required element. *Jovanovic v. City of New York*, No. 04 Civ. 8437 (PAC), 2016 WL 2411541, at *11 (S.D.N.Y. Aug. 17, 2006). Finally, as alleged, after being charged, Nelson spent approximately a week in custody before making bail and thereafter was required to make multiple court appearances, restraining his liberty. *See* TAC ¶¶ 66–68; *see also Jocks v. Tavernier*, 316 F.3d 128, 136 (2d Cir. 2003) (attending court proceedings and being subject to bail conditions satisfies liberty-restraint element).

Taken together, therefore, the TAC's allegations state a claim of malicious prosecution against NYPD officer Miszuk. However, because the TAC does not allege personal involvement by any other NYPD officers in initiating Nelson's prosecution, the Court dismisses the § 1983 malicious prosecution claim against the other NYPD defendants.

For their part, the DOCCS defendants argue that the TAC does not allege the first, third and fourth elements of a malicious prosecution claim: initiation, lack of probable cause, and malice. As to initiation, they argue that only one DOCCS officer, Etienne, is accused of playing a role in Nelson's arrest, and that his role was too tangential to qualify as commencing a criminal proceeding. That is wrong. As alleged, Etienne fabricated the claim of observing Nelson pass contraband; this became the foundation for Nelson's prosecution. *See* TAC ¶ 58. "A defendant may be said to commence or continue a prosecution if that defendant knowingly provides false information or fabricates evidence that is likely to influence the prosecutors or the grand jury." *Deskovic v. City of Peekskill*, 894 F. Supp. 2d 443, 456 (S.D.N.Y. 2012) (internal quotation marks and citation omitted). While Etienne is not alleged to have furnished this information directly to a prosecutor or grand jury, his furnishing it to the NYPD, as alleged, was likely to play a significant role in determining whether a prosecution ensued. That is enough. As to the second element, once Etienne's accusation is discounted as, allegedly, false, there was no

probable cause for the arrest. Finally, as to the element of malice, as noted, the claim of knowing perjury, which Nelson makes against Etienne, suffices to plead malice. *Jovanovic*, 2016 WL 2411541 at \*11.

The Court thus sustains the TAC's malicious prosecution claims against Etienne, but dismisses those against the other DOCCS defendants, whose personal involvement is not alleged.

### 4.    Abuse of Process

Finally, Nelson alleges that both sets of defendants abused process, resulting in Nelson being deprived of liberty. TAC ¶ 72.

To proceed on an abuse of process claim under § 1983, a plaintiff must allege that the defendant "(1) employs regularly issued legal process to compel performance of some act, (2) with the intent to do harm without excuse of justification, and (3) in order to obtain a collateral objective that is outside the legitimate ends of the process." *Savino*, 331 F.3d at 76–77 (internal citations and quotation marks omitted). There is a key distinction between an abuse of process claim and a malicious prosecution claim. "While [the latter], concerns the improper issuance of process, the gist of abuse of process is the improper use of process *after* it is regularly issued." *Cook v. Sheldon*, 41 F.3d 73, 80 (2d Cir. 1994).

Both sets of defendants argue that the TAC fails to allege both a collateral objective on their part and that legal process was used to compel any performance of an act by Nelson. As to the former, Nelson counters that DOCCS officers were incentivized to distract from and to cover up their failure to detect the intra-facility transfer of contraband, that they invented the claim against him so as to decrease pressure and work for themselves, *id.* ¶¶ 62–63, and that the NYPD officers, motivated by solidarity, assisted the DOCCS officers' cover up by perpetuating the lies that Nelson supplied the contraband. Pl Mem. at 16. The Court assumes that this allegation is

adequate to allege a collateral objective—an extraneous harmful goal—on the part of these

officers. *See Savino*, 331 F.3d at 77.

The TAC, however, does not allege, as is required, an abuse of process after it is

regularly issued. Nelson, at base, claims that the DOCCS officers accused him to cover-up

internal misfeasance. This is the foundation of his malicious prosecution claims. But Nelson

does not allege any ensuing improper use of process after its issuance, "as required to satisfy the

first element [of an abuse of process claim]." *Dowd v. DeMarco*, 314 F. Supp. 3d 576, 585

(S.D.N.Y. 2018) (complaint that fails to allege abuse after the defendant filed charges fails to

state a claim). The Court therefore dismisses the abuse of process claims against all defendants.

### C.    Claim One: Qualified Immunity

Both the City and the DOCCS defendants also argue that, even if Nelson and Luna had

adequately pled one or more viable claims of constitutional violations under § 1983, dismissal is

still warranted on grounds of qualified immunity.

Qualified immunity "shields government officials from civil damages liability unless the

official violated a statutory or constitutional right that was clearly established at the time of the

challenged conduct." 566 U.S. 658, 664 (2012). However, "a defendant presenting an immunity

defense on a Rule 12(b)(6) motion instead of a motion for summary judgment must accept the

more stringent standard applicable to this procedural route." *McKenna v. Wright*, 386 F.3d 432,

436 (2d Cir. 2004). Therefore, although possible, "*[u]sually*, the defense of qualified immunity

cannot support the grant of a [Rule] 12(b)(6) motion for failure to state a claim upon which relief

can be granted." *Id.* (internal quotation marks and citation omitted).

Such is true here. As to each of the above claims, the Court holds, it is premature to

resolve defendants' qualified immunity defense. That is because the TAC's allegations, on

which defendants here must rely, do not sufficiently "support . . . the defense . . . on the face of

the complaint." *Id.* at 435. Defendants are at liberty to raise this defense anew, after discovery, if the facts adduced make that defense applicable.

### D. Claim Two: Supervisory Liability Claims Under § 1983

The TAC seeks to hold DOCCS officers Detraglia, Willingham, Stovall, Tedesco, a "Michael Moe Correctional Captain," and unidentified supervisory DOCCS defendants "Paul Poes" liable under § 1983 for failing to "remedy the wrongs committed by their subordinates" and failure to "train, screen, supervise, or discipline their subordinates." TAC ¶ 75. The TAC brings similar claims against NYPD officer Tkaczuk and unidentified supervisory NYPD officers "Richard Roes." *Id.* The TAC alleges that these supervisory lapses brought about the violation of plaintiffs' rights. *Id.* ¶ 76.

Both sets of defendants move to dismiss these claims on the grounds that the TAC does not plead an underlying constitutional violation. Insofar as the Court has sustained plaintiffs' § 1983 claims as well-pled, save for the allegations of an abuse of process, that argument largely fails.

The DOCCS defendants separately argue that the TAC does not allege the individual involvement of any DOCCS supervisors, and while the NYPD defendants do not articulate this argument as clearly, the Court infers their intent similarly to contend. "It is well settled . . . that the doctrine of *respondeat superior* standing alone does not suffice to impose liability for damages under section 1983 on a defendant acting in a supervisory capacity." *Hayut v. State Univ. of New York*, 352 F.3d 733, 753 (2d Cir. 2003). Instead, "[e]vidence of a supervisory official's 'personal involvement' in the challenged conduct is required." *Id.* "The personal involvement of a supervisory defendant may be shown by evidence that . . . the defendant was grossly negligent in supervising subordinates who committed the wrongful acts." *Raspardo v. Carlone*, 770 F.3d 96, 116 (2d Cir. 2014) (quoting *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir.

1995)). "[G]ross negligence denotes a higher degree of culpability than mere negligence." *Id.* at 116. "It is the kind of conduct where the defendant has reason to know of facts creating a high degree of risk of . . . harm to another and deliberately acts or fails to act in conscious disregard or indifference to that risk." *Id.*

Here, read liberally, the TAC alleges that officers in supervisory positions at both DOCCS and the NYPD were in a position to observe the violations of Nelson and Luna's rights and that they failed to take remedial action. As to the DOCCS defendants, the TAC alleges that a number of unidentified DOCCS officers, including apparent supervisory personnel, were involved in detaining both Nelson and Luna in the visiting room and later in the locker room. TAC ¶¶ 27–30, 33–41. Specifically, an unidentified DOCCS Correctional Captain instructed Nelson and Luna that they were being removed to the locker room. *Id.* ¶¶ 31–32. A logical inference is that this captain was on the scene and privy to what the TAC claims was an unlawful detention and arrest. As to the NYPD defendants, the TAC alleges that at least one supervisory officer was present for the arrest, *id.* ¶¶ 43, 52, and so it is plausible that an NYPD supervisory officer observed the false arrest, knew of the likely ensuing strip search, and failed to intervene.

Accordingly, the Court denies the motions to dismiss this claim. Discovery will help ascertain whether there is a basis for supervisory liability and, presumably, the identity of the supervisors, if any, as to whom the facts would permit a finding of such liability.

### E. Claim Three: *Monell* Liability

Because the TAC viably pleads constitutional violations, the Court considers plaintiffs' § 1983 claim, under the *Monell* doctrine, for municipal liability, which defendants move to dismiss as deficiently pled.

"[T]o hold a city liable under § 1983 for the unconstitutional actions of its employees, a plaintiff is required to plead and prove three elements: (1) an official policy or custom that (2)

causes the plaintiff to be subjected to (3) a denial of a constitutional right." *Wray v. City of New York*, 490 F.3d 189, 195 (2d Cir. 2007) (internal quotation marks and citation omitted).

There are four ways to establish the first element—the existence of an official policy or custom. A plaintiff may plead that the constitutional violation was caused by: "(1) a formal policy officially endorsed by the municipality; (2) actions taken by government officials responsible for establishing the municipal policies that caused the particular deprivation in question; (3) a practice so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a supervising policy-maker must have been aware; or (4) a failure by policymakers to provide adequate training or supervision to subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come into contact with municipal employees." *Brandon v. City of New York*, 705 F. Supp. 2d 261, 276–277 (S.D.N.Y. 2010) (citations omitted); *see also Spears v. City of New York*, No. 10 Civ. 3461 (JG), 2012 WL 4793541, at *11 (E.D.N.Y. Oct. 9, 2012).

Here, the TAC purports to plead each of these alternatives, but its claims are conclusory. It recites that the City had "de facto policies, practices, customs" of: failing to properly train, screen, supervise or discipline officers, TAC ¶ 79, encouraging or tacitly sanctioning the cover-up of other officers' misconduct," adhering to "'the blue wall of silence,'" "engaging in unconstitutional and overly aggressive stops and frisks, and arrests," and "engaging in illegal and invasive searches, including strips searches," *id.* ¶¶ 80–82. But it does not substantiate any of these broad claims. As a result, the TAC fails adequately to allege any of the above means of pleading any official policy or custom

The TAC primarily appears to focus on the fourth means—a failure to train. A plaintiff may plead a *Monell* claim based on a failure to train only by pleading that a City's "failure to

30

train its subordinates . . . is so obvious, and the inadequacy of current practices so likely to result in a deprivation of federal rights, that the municipality or official can be found deliberately indifferent to the need." *Reynolds v. Giuliani*, 506 F.3d 183, 192 (2d Cir. 2007) (citing *City of Canton v. Harris*, 489 U.S. 378, 390 (1989)). To show deliberate indifference, "Plaintiffs are required to submit evidence that defendants knew to a moral certainty that the City would confront a given situation; the situation presented the City with a difficult choice or there was a history of its mishandling the situation; and the wrong choice by the City would frequently cause the deprivation of plaintiffs' rights." *Id.* (citing *Walker v. City of New York*, 974 F.2d 293, 297–98 (2d Cir. 1992)). The Second Circuit has held that some non-conclusory allegation as to deficient training programs is therefore necessary at the pleading stage. *See Simms v. City of New York*, 480 F. App'x 627, 631 n.4 (2d Cir. 2012) ("While it may be true that § 1983 plaintiffs cannot be expected to know the details of a municipality's training programs prior to discovery . . . this does not relieve them of their obligation under *Iqbal* to plead a facially plausible claim."). Here, the TAC entirely fails to do so. It relies instead solely on generalized allegations. *See* TAC ¶ 80 ("At all times material to this complaint, the defendant The City of New York, acting through its police department and through the individual defendants, had de facto policies, practices, customs and usages of failing to properly train, screen, supervise, or discipline employee police officers, and of failing to inform the individual defendants' supervisor of their need to train, screen, supervise or discipline said defendants."). The absence of any concrete allegation as to a specific training deficiency precludes plaintiffs from proceeding on this theory.

As noted, a plaintiff alternatively may pursue municipal liability under § 1983 by alleging "municipal inaction such as the persistent failure to discipline subordinates who violate civil

rights," as such a pattern "could give rise to an inference of an unlawful municipal policy of ratification of unconstitutional conduct within the meaning of *Monell*." *Batista*, 702 F.2d at 397. "However, 'the stringent causation and culpability requirements set out in [*City of Canton*] have been applied to a broad range of supervisory liability claims' beyond failure-to-train, including failure-to-supervise and failure-to-discipline claims." *Calderon v. City of New York*, 138 F. Supp. 3d 593, 614 (S.D.N.Y. 2015) (citing *Reynolds*, 506 F.3d at 192). The "complaint must allege that 'the need for more or better supervision . . . was obvious,' but that the defendant 'made no meaningful attempt' to prevent the constitutional violation.'" *Missel v. Cty. of Monroe*, 351 F. App'x 543, 546 (2d Cir. 2009) (quoting *Amnesty Am. v. Town of West Hartford*, 361 F.3d 113, 127 (2d Cir. 2004)). The TAC falls well short of these standards. While it broadly alleges that supervisory personnel were present for the alleged false arrests and the consequent strip search of Nelson, yet failed to intervene, the TAC does nothing to connect these violations to City decisionmakers or to suggest anything other than an isolated lapse. This theory of *Monell* liability is thus also unavailable to plaintiffs.

Additionally, "an act performed pursuant to a 'custom' that has not been formally approved by an appropriate decision maker may fairly subject a municipality to liability on the theory that the relevant practice is so widespread as to have the force of law." *Bd. of Cty. Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 404 (1997). But the TAC offers nothing concrete in support of this theory. Plaintiffs' memorandum relies instead on broad invocations of a "blue wall of silence," and an editorial from the NYPD Commissioner who states that he has "zero tolerance" for perjury by police officers. *See* Pl. Mem. at 24 (citing James O'Neill, New York Daily News, *NYPD Commissioner O'Neill on his Zero-Tolerance Policy for Perjury*, N.Y. Daily News (Mar. 3, 2018)). These allegations, which, if anything, convey official disapproval

of such misconduct, fall far short of pleading a de facto custom of lying that is "so widespread as to have the force of law."

The TAC thus fails, by any route, to allege an official policy or custom. The Court therefore has no occasion to consider the other elements of a *Monell* violation, including that the constitutional violation at issue was caused by that policy or custom. Accordingly, the Court grants the motion to dismiss the TAC's *Monell* claims. *See, e.g., Calderon*, 138 F. Supp. at 615 (dismissing conclusory *Monell* claims); *Fierro v. N.Y.C. Dep't of Educ.*, 994 F. Supp. 2d 581, 589 (S.D.N.Y. 2014) (same); *Thawney v. City of New York*, No. 17 Civ. 1881 (PAE), 2018 WL 4935844, at *7 (S.D.N.Y. Oct. 11, 2018) (same); *Tieman v. City of Newburgh*, No. 13 Civ. 4178 (KMK), 2015 WL 1379652, at *23 (S.D.N.Y. Mar. 26, 2015) (same).

## F.     Claim Five: Nelson's State Law Malicious Prosecution Claims

The TAC also brings state-law malicious prosecution claims against the City defendants. TAC ¶ 88. As to this claim, unlike the federal analogue, the City defendants acknowledge that, under state law, the criminal case against Nelson *was* terminated in his favor. They pursue dismissal on the ground that there was probable cause to prosecute Nelson. For the reasons reviewed above, however, the facts alleged in the TAC and cognizable here do not establish probable cause, given Nelson's allegation that the core observation underlying his arrest and prosecution, to wit, that he had passed contraband to his friend, was fabricated. Accordingly, the Court denies the City's motion to dismiss this claim against NYPD officer Miszuk, the one defendant who is alleged to have initiated the prosecution. As with the malicious prosecution claim under § 1983, the Court grants the motion to dismiss this claim against the other individual defendants, who are not alleged to have been personally involved in commencing or pursuing the prosecution.

### G.  Claim Four: Nelson's *Respondeat Superior* Claims

The Court now turns to Nelson's claim of *respondeat superior* liability against the City, based on the state-law claim of malicious prosecution against NYPD officer Miszuk that the Court has held adequately pled. "If the plaintiff is able to establish any of his pendent state law claims, he can recover against the City of New York under the common law doctrine of *respondeat superior*." *Ramos v. City of New York*, No. 15 Civ. 6085 (ER), 2017 WL 3267736, at *12 (S.D.N.Y. July 31, 2017) (quoting *Anderson v. City of New York*, 817 F. Supp. 2d 77, 98 (E.D.N.Y. 2011)). Defendants' motion to dismiss this claim was premised on the dismissal of the underlying state-law malicious prosecution claim. Insofar as the Court has sustained this claim as plausibly pled, Nelson's *respondeat superior* claim against the City also survives.

## CONCLUSION

For the foregoing reasons, the Court denies defendants' motions to dismiss the TAC, with the following exceptions: The Court dismisses (1) plaintiffs' claim for *Monell* liability under § 1983; (2) Nelson's § 1983 claims of abuse of process; (3) Nelson's § 1983 fabrication of evidence claim, except as against DOCCS officer Etienne and NYPD officer Miszuk; and (4) Nelson's claims for malicious prosecution, under both § 1983 and state law, except as against DOCCS officer Etienne and NYPD officer Miszuk. The Clerk of Court is respectfully directed to terminate the motions pending at Dkts. 61, 64, 66, 72, and 74.

This case will now proceed promptly to discovery. The parties are directed to, within two weeks of this Opinion, file a proposed case management plan that contemplates the close of fact discovery by mid-December 2019 in accordance with the Court's individual rules.

SO ORDERED.

Paul A. Engelmayer
United States District Judge

Dated: August 9, 2019
       New York, New York